# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



Roberto Mejia (IDOC Reg. No. R-24468), )
                                       Petitioner, )
                                             )     Case No. 06 CV 0384
v.                                         )
                                             )     Judge Joan H. Lefkow
Don Hulick, Warden, )
Menard Correctional Center, )

                                Respondent. )

## MEMORANDUM OPINION AND ORDER

This case is a petition for a writ of habeas corpus filed by Roberto Mejia, who is presently in the custody of the Illinois Department of Corrections. The petition is denied.

### A. PROCEDURAL HISTORY

During January, 2002 a jury convicted petitioner of murder and aggravated discharge of a firearm and sentenced him to a term of 32 years' imprisonment. His conviction was affirmed on direct appeal to the Illinois Appellate Court by order dated June 28, 2004. His petition for leave to appeal to the Illinois Supreme Court was denied on November 24, 2004. He filed a timely petition for a writ of certiorari in the United States Supreme Court, which was denied on October 3, 2005. This petititon for a writ of habeas corpus was timely filed within one year of his direct appeal, on January 23, 2006. Petitioner has exhausted his state court remedies, and his claim is to be evaluated under the provisions of 28 U.S.C. § 2254.

Petitioner raises the following claims: (1) the Illinois rule, that where a general guilty verdict is returned in a murder case there is a presumption that the jury intended to find defendant guilty of murder and not felony murder, is contrary to Supreme Court precedent and denied petitioner a fair trial; (2) the prosecutor's prejudicial presentation of evidence concerning gangs and gang recruitment denied petitioner a fair trial; and (3) the prosecutor made improper and prejudicial argument in regard to proximate cause which denied petitioner a fair trial.

Petitioner does not challenge the facts as set forth by the Illinois Appellate Court in its opinion affirming the judgment of the trial court. This court, therefore, presumes these facts are correct for purposes of collateral review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003) (habeas petitioner can rebut presumption with clear and convincing evidence). Thus, the court adopts the facts as set forth by the appellate court on direct appeal, *People v. Mejia*, No. 1-02-2342 (Ill. App. Ct. 1st Dist. June 28, 2004) ("Decision"), App. A. to Petition.

### B. SUMMARY OF THE FACTS

The essential facts are as follows: During the evening of September 24, 1999, petitioner was driving a car with his girlfriend and two other passengers, Falls and Czech. The three males were members of the Maniac Latin Disciples street gang. Czech instructed petitioner to drive into an alley where Falls obtained a stored gun and re-entered the car. At Czech's direction petitioner proceeded to a location where Czech "started gangbanging to" a group of people they identified as Latin Kings who were standing on the sidewalk. Czech directed Falls to fire towards people on the sidewalk. Falls fired five shots out the window. One of the bullets killed 14-year-old Alonzo Zuñiga.

2

The jury was given the following instructions, pertinent here:

No. 13:
    To sustain the charge of first degree murder, it is not necessary for the State to show that it was or may have been the original intent of the defendant or one for whose conduct he is legally responsible to kill the deceased, Alonzo Zuñiga.

    It is sufficient if the jury believes from the evidence beyond a reasonable doubt that the defendant and one for whose conduct he is legally responsible combined to do an unlawful act, such as to commit aggravated discharge of a firearm, and that the deceased was killed by one of the parties committing that unlawful act.

No. 15:
    To sustain the charge of first degree murder, the State must prove the following propositions:

    First: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Alonzo Zuñiga; and

    Second: That when the defendant, or one for whose conduct he is legally responsible, did so,

        he intended to kill or do great bodily harm to Alonzo Zuñiga or another; or

        he knew that his acts would cause death to Alonzo Zuñiga or another; or

        he knew that his acts created a strong probability of death or great bodily harm to Alonzo Zuñiga or another; or

        he was committing the offense of aggravated discharge of a firearm.

    If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

    If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonble doubt, you should find the defendant not guilty.[1]

---

[1] A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

    (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

    (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

    (3) he is attempting or committing a forcible felony other than second degree murder.

720 Ill. Comp. Stat. 5/9-1(a).

3

During deliberations, the jury submitted a question to the judge: "To sustain the charge of first-degree murder do we have to agree on the first proposition and agree on one of the points in the second section or do we have to agree on all of the points in the second section [?]" The judge responded, "The word 'or' in the instruction . . . beginning 'to sustain the charge of first degree murder' is used to separate possible alternatives." The jury then convicted Mejia of first degree murder in addition to aggravated discharge of a firearm.

## II. LEGAL STANDARDS

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny petitioner's application for a writ of habeas corpus with respect to any claim decided on the merits by the state court unless the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405. A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [that] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it

4

should apply." *Williams*, 529 U.S. at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *See Lockyer v. Andrade*, 538 U.S. 63, 74, 123 S. Ct. 1166, 1174, 155 L. Ed. 2d 144 (2003). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003) (reasonable state court decision must be at least minimally consistent with facts and circumstances of case).

Before reviewing the merits of the Illinois Appellate Court's decision, this court must determine whether petitioner fairly presented his federal claims to the Illinois courts because any claim not presented to the state's highest court is deemed procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). Also, procedural default occurs when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *See Stewart v. Smith*, 536 U.S. 856, 860, 122 S. Ct. 2578, 153 L. Ed. 2d 762 (2002). Under Illinois law, waiver is an independent and adequate state ground. *See Whitehead v. Cowan*, 263 F.3d 708, 726-27 (7th Cir. 2001). A federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Anderson v. Cowan*, 227 F.3d 893, 899-90 (7th Cir. 2000).

A petitioner must present both the operative facts and controlling legal principles to the state court – a mere reference to a constitutional issue is not enough. *See Chambers v.*

5

*McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). Factors relevant to whether a habeas petitioner has fairly presented a claim to the state courts include whether petitioner's state court argument (1) relied on federal cases that engage in constitutional analysis; (2) relied on state cases that apply a constitutional analysis to similar facts; (3) asserted a claim in particular terms that call to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Wilson*, 243 F.3d at 327.

Federal courts do not automatically conclude that a habeas petitioner has fairly presented his claim if he fulfills any one of these four factors. *See Molterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997). Instead, courts must carefully consider the specific facts of each case. *See Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996).

### A. Claim 1

Petitioner's first claim challenges the application in his case of the Illinois rule that holds that where a general guilty verdict is returned in a murder case there is a presumption that the jury intended to find the defendant guilty of intentional murder rather than felony murder. He contends that the presumption, as applied by the Illinois Appellate Court, is contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Respondent asserts that this argument is "arguably" forfeited because petitioner did not adequately present the claim to the state court, citing to text within the Decision identifying many issues that defendant raised but did not adequately address in argument (although that list does not include the issue presented here as Claim 1). In reply, petitioner demonstrates that he raised

6

and briefed the issue in a post-trial motion for a new trial, on a motion to reconsider denial of that motion (Exh. 3 to reply brief, ¶ 5), in his appellate brief (Exh. 4, at 15-20), and in his petition for leave to appeal (Exh. 6, at 6-11).[2] Petitioner consistently argued that the jury should not have been given a felony murder instruction under governing Illinois law, citing *People v. Morgan*, 758 N.E.2d 813, 197 Ill. 2d 404, 259 Ill. Dec. 405 (2001), and that the error deprived him of a fair trial because there is no rational basis for any assumption that the jury would have returned a guilty verdict had it not been instructed on felony murder. He relied on the Due Process Clause as interpreted in *Stromberg v. California*, 283 U.S. 359, 368, 51 S. Ct. 532, 75 L. Ed. 1117, (1931) (where jury was instructed that it could convict if it found violation of any one of three clauses of a prohibition, but one clause violated the First Amendment and it was impossible to say under which clause of the statute the conviction was obtained, the conviction could not be upheld); *Street v. New York*, 394 U.S. 576, 585-88, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969) (following *Stromberg*); *Leary v. United States*, 395 U.S. 6, 52-53, 89 S. Ct. 1532, 1556-57, 23 L. Ed. 2d 57 (1969) (in absence of showing that majority of marihuana possessors either were cognizant of high rate of importation or otherwise were aware that their marihuana was grown

---

[2] A copy of Defendant's First Additional Post-Trial Motion attached to the reply brief, Exh. 1 at 4, reveals the due process argument made here: "Contrary to and in direct violation of the federal constitutional principle . . . the Illinois Supreme Court has utilized an irrational mandatory presumption . . . to conclude that the felony murder instructional error did not deprive Morgan [*sic*] of a fair trial . . . ." Trial counsel did not object to the felony murder instruction. Petitioner's motion for new trial was denied and petitioner filed a motion for reconsideration asserting ineffective assistance of trial counsel for failure to object to the instruction and failure to request separate verdicts for intentional murder and felony murder. The appellate court noted that petitioner had raised the felony murder instruction in the form of ineffective assistance of counsel but "found no evidence that defendant was deprived of his right to a fair and impartial trial as a result of trial counsel's ineffectiveness." Decision at 23, n. 2. Both petitioner and respondent argue this case as one of fundamental error, and the court addresses it as such. *See, e.g., People v. Carlson*, 404 N.E.2d 233, 238, 79 Ill. 2d 564, 576, 38 Ill. Dec. 809, 814 (Ill. 1980) ("Our Rule 615(a) embodies the exception to the waiver rule. It provides, in part: 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.'").

7

abroad, statute authorizing jury to infer from defendant's possession that defendant knew that marihuana came from abroad was invalid under due process clause); and *Tot v. United States*, 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943) (a statutory presumption cannot be sustained if there is no rational connection between the facts proved and the ultimate fact presumed).

The appellate court ruled, based on *Morgan* and *People v. Toney*, 785 N.E.2d 138, 337 Ill. App. 3d 122 (Ill. App. Ct. 1st Dist. 2003), that the felony murder instruction was erroneously given but because "we must presume that the jury found defendant guilty of the most serious crime alleged, which was intentional, or knowing murder, ... any error in instructing the jury on felony murder did not deprive defendant of a fair trial." Decision at 27-28. The appellate court also concluded that the failure to object to the felony murder instruction did not constitute ineffective assistance of counsel based on overwhelming evidence of guilt in the record. Decision at 28. The court did not address the due process argument but, plainly, petitioner presented both the operative facts and the controlling legal principles to the appellate court and at each earlier stage of the proceeding. Therefore, the claim is not defaulted.

On the merits, petitioner's argument begins with the ruling of the appellate court that the jury should not have been instructed that it could find defendant guilty of felony murder because "the aggravated discharge of a firearm charge was inherent in the murder of Zuñiga." Decision at 27. This argument is consistent with *Morgan*, a case in which the defendant, in addition to first and second degree murder, was charged with first degree murder by attempting or committing a forcible felony, namely aggravated discharge of a firearm. The appellate court agreed and ruled that because the petitioner did not have a felonious purpose to commit a crime other than the killing itself, it was error to give a felony murder instruction. Nevertheless, in petitioner's case

8

(as in *Morgan*), the court ruled the error not reversible because Illinois law presumes that "where an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count." Decision at 27 (internal citations, quotation marks and ellipsis omitted), citing *People v. Thompkins*, 521 N.E.2d 38, 62, 121 Ill. 2d 401, 455, 117 Ill. Dec. 927 (Ill. 1988), and *People v. Lymore*, 185 N.E.2d 158, 159, 25 Ill. 2d 305, 308 (Ill. 1962). "Thus, a general verdict finding a defendant guilty of murder, where the defendant was charged with intentional, knowing, and felony murder, raises the presumption that the jury found that the defendant committed the most serious crime alleged, intentional murder." Decision at 27, citing *Thompkins*, 121 Ill. 2d at 456.

Petitioner argues that this presumption violates due process because there is no factual or rational basis to apply it in his case, where the jury instructions, reinforced by the judge's response to the jury's question, allowed the jury to convict if it found only that Falls performed the acts that caused the death of Zuñiga; and that when he did so, he was committing the offense of aggravated discharge of a firearm. He relies on *Stromberg v. California*, 283 U.S. 359, 368, 51 S. Ct. 532, 535, 75 L. Ed. 1117 (1931). *Stromberg* held that "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a verdict that may have rested on that ground." 283 U.S. 359, 367-68; *Griffin v. United States*, 502 U.S. 46, 53, 112 S. Ct. 466, 471, 116 L. Ed. 2d 371 (1991). Petitioner does not argue that a conviction based on felony murder would violate the Constitution, however, and therefore the *Stromberg* rule does not apply. *See Clark v. Crosby*, 335 F.3d 1303, 1310 (11th Cir. 2003) ("[Petitioner] does not assert that a conviction for attempted felony murder, as such, would violate the Constitution. As a consequence, the rule in *Stromberg* does not apply. . . .").

9

*Yates v. United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1073, 1 L. Ed. 2d 1356 (1957), is more relevant to Petitioner's case. *Yates* applied *Stromberg* to invalidate a general verdict in which one of the possible bases for conviction did not violate any provision of the Constitution but was simply legally inadequate, as it was barred by a statute of limitations. 354 U.S. at 312. The Court later characterized this holding as "an unexplained extension [of *Stromberg*], explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in a federal prosecution." *Griffin*, 502 U.S. at 55-56. The *Griffin* Court did not have occasion to decide whether to continue to adhere to *Yates*, however, because it was faced with a different situation: one in which a jury had been instructed on multiple possible bases for conviction which were all *legally* valid, but one basis was not supported by sufficient factual evidence. 502 U.S. at 56. The Court distinguished between legal error, as in *Yates*, and insufficient proof, and held that where a jury is correctly instructed as to the applicable law, but one possible basis for conviction is not supported by sufficient evidence, a general verdict is sound, because juries can be relied upon to analyze the facts. 502 U.S. at 59.

The Seventh Circuit provided guidance on how to address claims based on *Yates* and *Griffin* in the context of a habeas petition in *Tenner v. Gilmore*, 184 F.3d 608 (7th Cir. 1999). There, the petitioner argued that because the Illinois Supreme Court reversed his conviction for attempted murder, and felony murder based on attempted murder was one of the four possible bases for his murder conviction, the jury's general verdict of guilty could not stand based on *Yates* and *Griffin*. 184 F.3d at 610-11. The Seventh Circuit rejected this argument because the jury had also convicted the defendant of aggravated unlawful restraint, a crime which also supported the felony murder conviction. *Id.* at 612. To conclude that the jury based their

10

conviction only on attempted murder would have required the court to attribute random or irrational conduct to the jury, which it declined to do: "What *Griffin* holds is that perverse factfinding should not be attribued to juries.... [V]erdicts are not annulled just because illogical jury behavior *might* have occurred." *Id.* at 612. The court therefore held that the case was governed by *Griffin* rather than *Yates*, and that the jury verdict was sound. Along the way, it noted that the Seventh Circuit has not addressed the question of whether *Yates* clearly established a rule of constitutional law that is binding on state courts, as opposed to just one of sound practice in federal courts, but declined to address that question because the petitioner could not prevail either way according to *Griffin*. *Id.*[3]

In this case, similar to *Tenner*, it would be irrational for the jury to have convicted based only on felony murder. If the jury convicted on the basis of felony murder alone, it necessarily found that Falls knowingly discharged a firearm in the direction of another person (committing aggravated discharge of a firearm, 720 Ill. Comp. Stat. 5/24-1.2(a)(2)), and that a person (Zuñiga) was killed. This same proof was essential to an alternative theory of first degree murder: that a person causes the death of another person by performing an act (discharging a firearm in the direction of a person), plus the additional proof that the actor knew that the act created a strong probability of death or great bodily harm to that individual or another. See 720 Ill. Comp. Stat. 5/9-1(a)(2), supra note 1. Thus, only if the jury found that Falls did not know that his act of discharging the firearm in the direction of another person created a strong probability of death or great bodily harm would it be reasonable to conclude that petitioner was convicted of felony

---

[3] The Eleventh Circuit has addressed this question and found that *Yates* did not establish a rule of constitutional law that is binding on the states. *Clark v. Crosby*, 335 F.3d 1303, 1310 (11th Cir. 2003), *cert. denied*, 540 U.S. 1155, 124 S. Ct. 1159, 157 L. Ed. 2d 1052 (2004).

murder alone. Such a logical leap would be considerably less rational than the presumption that petitioner challenges in this case. *See Tenner*, 184 F.3d at 612 (verdicts are not annulled just because illogical jury behavior *might* have occurred).

Under the facts presented, at least, the Illinois Appellate Court's decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Furthermore, even though the trial judge erred in giving the felony murder instruction, any such error was certainly harmless. As Judge Pallmeyer explained in *United States ex rel. Harris* v. *Cowan*, 2002 WL 27411, at *10 (N.D. Ill. Jan. 9, 2002),

> In *Brecht v. Abrahamson*, the United States Supreme Court stated that trial-type constitutional error, which occurs during presentation of the case to the jury, is subject to a harmless-error analysis. 507 U.S. 619, 629 (1993). This analysis includes consideration of the error in context of all other evidence presented to determine the effect the error might have had. *Id.* On habeas review of constitutional error, an error is harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' 507 U.S. at 637 (citing the standard enunciated in *Kotteakos* v. *United States*, 328 U.S. 750, 776 (1946)).

For the reasons already explained, the court is satisfied that the jury could not have been materially influenced by the felony murder instruction.

### B. Claim 2

Petitioner claims that he was denied a fair trial due to admission of prejudicial evidence concerning gangs and gang recruitment and prejudicial statements about gangs by the prosecutor. Conceding that evidence concerning gangs can be admissible in some circumstances, petitioner contends that the prejudicial effect of the evidence in this case outweighed its probative value and denied him due process of law. Respondent argues that this claim is defaulted because

12

petitioner failed to object at trial and because he failed adequately to present the claim before the state appellate court. Furthermore, respondent argues, petitioner cannot demonstrate cause for the default and resulting prejudice; nor can he show a manifest miscarriage of justice if the claim is not reviewed.

Petitioner's appeal included the issue of improper statements by the prosecutor during opening and closing concerning gang affiliation and improper admission of evidence about gang recruitment. The court determined the issues waived, however, because "defendant failed to put forth the requisite minimum legal analysis and citation to legal authority necessary for a response by the State and a disposition by this court[,]" Decision at 20, citing Illinois Supreme Court Rule 341(e)(7), which requires appellate argument to "contain the contentions of the party and the reasons therefor, with citations of the authorities and the pages of the record relied on." Decision at 21.

In his appellate brief, petitioner argued as he does here that he was denied a fair trial because he was tarred with a gang label equivalent to perjoratives of past eras applied to racial minorities, union organizers, pacifists, and communists. He objected to the prosecutor's statement in opening that the jury would see "how street gangs operate," her calling on the jury to recall media coverage about street gangs in Chicago, seven times calling petitioner and his fellow gang members "partners in crime," and in closing statements again calling them partners in crime. Petitioner on appeal cited *People v. Smith*, 565 N.E.2d 900, 141 Ill. 2d 40, 152 Ill. Dec. 218 (Ill. 1990), for the proposition that "it is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant, without throwing any light on the question for decision." Petitioner

also cited *Clemons* v. *Walls*, 202 F. Supp. 767 (N.D. Ill. 2002) (although he did not note this case was reversed on the basis of procedural default *sub nom. Clemons* v. *McAdory*, 58 F. App'x. 657, 2003 WL 725649 (7th Cir. 2003)).

In his appeal, petitioner failed to present his claim sufficiently clearly to overcome the procedural default hurdle. Other than citing a reversed federal district court case, he did not rely on federal cases that engage in constitutional analysis; his citation to *Smith* for the unimpeachable principle that evidence must be more probative than prejudicial to be admissible does not make *Smith* a case containing constitutional analysis based on similar facts. The conviction in *Smith* was reversed because the evidence failed to permit a reasonable inference that the defendant was a gang member and because the State could not demonstrate that gang affiliation provided any motive or relevance to the crime charged. 141 Ill. 2d at 59. The facts in *Smith* are readily distinguishable from the case before this court, and *Smith* makes no reference to federal constitutional analysis. In addition, petitioner did not assert his claim in constitutional terms or in terms that call to mind a specific constitutional right; nor did he alleged a pattern of facts well within the mainstream of constitutional litigation. Petitioner has not attempted to demonstrate "cause and prejudice" nor to demonstrate a fundamental miscarriage of justice. *See Clemons* v. *McAdory*, 58 F. App'x. at 661 (citing *Dellinger* v. *Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) ("[O]ur case law is clear that relief is limited to situations where the constitutional violation has probably resulted in a conviction of someone who is actually innocent.")). For these reasons, the court must conclude that Claim 2 is procedurally defaulted.

### C. Claim 3

Petitioner's final claim is that the prosecutor's improper and prejudicial argument to the jury in regard to "proximate cause" denied defendant due process. He contends that the prosecutor misstated the law of accountability in her opening statement when she told the jury that petitioner was responsible for everything "because he drove the car there," Petition at 14, and in closing statement by urging that "but for" petitioner, the crime would not have occurred. Petition at 15. He contends that this misstates the law of accountability in that the State must prove intent to aid or assist the commission of the crime, citing, *inter alia*, *People* v. *Evans*, 429 N.E.2d 520, 87 Ill. 2d 77, 57 Ill. Dec. 622 (Ill. 1981), and insists that this error was not cured by the judge's sustaining petitioner's objection. He contends that he was denied due process because appropriate instructions are absolutely required as a matter of fundamental fairness, citing *Screws* v. *United States*, 325 U.S. 91, 106-07, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945). He further argues that because the error was fundamental, the harmless error rule does not apply and the conviction must be reversed. Respondent does not argue procedural default, as the appellate court addressed this issue on the merits, but contends that petitioner fails to demonstrate a denial of due process.

Under *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), in order to prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." In evaluating such a claim, the first inquiry is whether the comments were improper and, if so, whether the statements in light of the entire record demonstrate that the defendant was prejudiced.

The appellate court set out the prosecutor's statements at issue (repeated at page 26-28 of the respondent's Answer to the Petition). The prosecutor's opening statement included the following characterization of the law:

> Sometimes it's called the law of legal responsibility. What that law means is that when criminals formulate a plan to get together and act together to carry out that plan, each person who plays a role in that plan is responsibile for the actions of every single person involved. That means that Roberto Mejia is responsible for that action of everything that happened that night because he drove that car there. . . .

Her closing statement asked the jury to think of it this way:

> [W]hen you go in the back, but for Robert Mejia would this shooting have been able to happen? But for letting Kevin Czech in his car . . . [If] Robert Mejia didn't exist, Kevin Czech would not have stayed in his car after suggesting going by the Kings. Smiley would never have been picked up because Bobby wouldn't have been there with his car. . . . If it wasn't for his active role in this, ladies and gentlemen, this shooting would never have been possible that night. . . .

The court determined that the prosecutor's statements, in context, did not misstate the law of accountability to the jury. "Rather, the section of opening statements and closing argument that defendant contests was relative to the State's theory of defendant's vital role in the occurrence that resulted in the death of Zuñiga. This argument was appropriate in its context and supported by the evidence elicited through testimony at trial." Decision at 32. Furthermore, the court found that even if improper, the remarks did not result in substantial prejudice to the defendant; any prejudice was cured by the judge's sustaining the objection; the trial judge had not abused his discretion with respect to the closing argument; and, in any event, the evidence of guilt under a theory of accountability was, "overwhelming." Decision at 32-33. Although the appellate court did not cite a source for Illinois' law of accountability, its opinion is consistent with cases such as *People v. Sangster*, 437 N.E.2d 625, 628, 91 Ill. 2d 260, 265, 62 Ill. Dec. 937

(Ill. 1982), which reveals that Illinois adheres to "the long established common-design rule, *i.e.*, that where defendants have a common design to do an unlawful act, then whatever act any one of them does in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed." *See* 720 Ill. Comp. Stat. 5/5-2(c).[4]

Citing *Evans*, petitioner appears to argue that the prosecutor's statement permitted the jury to find him accountable without the requisite intent. *Evans* affirmed reversal of a conviction based on accountabililty where the record "reveal[ed] no direct evidence of fact upon which the jury could arrive at the conclusions advanced by the State to establish accountability[.]" *Id.* at 85. The court stated, "Mere presence does not render one accountable under the statute; there must be proof of the required intent and that defendant aided, abetted or attempted to aid another in the perpetration of the crime." *Id.* at 83, citing *People v. Tyler*, 399 N.E.2d 975, 977, 78 Ill. 2d 193, 196-97, 35 Ill. Dec. 686 (Ill. 1979).

Petitioner does not argue that the jury was not given a proper accountability instruction. Nor does he demonstrate that the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. The appellate court's summary of the evidence reveals that witness Malave testified (among other facts) that she was present in the

---

[4]§ 5-2. When Accountability Exists. A person is legally accountable for the conduct of another when:

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable, unless the statute defining the offense provides otherwise, if:

(1) He is a victim of the offense committed; or
(2) The offense is so defined that his conduct was inevitably incident to its commission; or
(3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense.

17

vehicle, that Czech told petitioner that they were to find Falls and "cruise by the Kings"; that Czech directed petitioner to drive to an alley where Falls went into a gangway and returned; and that Czech directed Falls into the front seat and warned Malave that she should "put [her] fingers in [her] ears because [she] was going to hear something loud." Decision at 4-6. Officer Rutherford testified that petitioner made a statement admitting that Falls showed him the gun after he retrieved it from the alley and that he knew they were "going to shoot at some Kings." *Id.* at 7-8. Even broader admissions were given to an assistant state's attorney, including that petitioner heard Czech tell Falls to go pick up a gun and they intended to drive by the Kings "mostly to shoot at one of them." *Id.* at 9-10. Petitioner's testimony in his own defense would permit the inference that he did not know about a gun or that Czech intended to shoot at anyone. *Id.* at 13-18. Nevertheless, unlike the situation in *Smith*, the jury certainly had evidence before it sufficient to permit a reasonable inference of the necessary intent to aid another in the perpetration of the crime. Petitioner has presented no cause for this court to conclude that he was denied a fair trial because of the unreasonable application of federal law, nor that the prosecutor's conduct caused such great unfairness that his right to a fair trial was violated.

## CONCLUSION AND ORDER

For the foregoing reasons, the petition of Roberto Mejia for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [#1] is denied. This case is terminated.

ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 1, 2007